IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRYSTAL L. G.,[1]

        Plaintiff,

v.

COMISSIONER of SOCIAL SECURITY,

        Defendant.

Case No. 21-CV-00272-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on March 19, 2019, alleging disability beginning February 21, 2019. (Tr. 72.) After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on August 17, 2020 (Tr. 13-28). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

1. The ALJ erred in failing to identify the evidentiary basis of her assessment of Plaintiff's residual functional capacity (RFC).

2. The ALJ erred in failing to properly assess Plaintiff's subjective allegations.

3. The Social Security Administration was constitutionally invalid at the time of the ALJ's decision, rendering the decision constitutionally defective.

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability.

*Id*. The plaintiff bears the burden of proof at steps 1–4. *Id*. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id*.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 15.) The ALJ found that plaintiff had severe impairments of type II diabetes mellitus with diabetic polyneuropathy and level III obesity. (*Id.*)

The ALJ determined Plaintiff had the RFC to perform sedentary work, but limited to no crawling; no climbing of ladders, ropes, or scaffolds; occasional climbing ramps and stairs, and occasional balancing, stooping, kneeling, and crouching. (Tr. 19.) Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff was unable to do his past relevant work, while also making an alternative finding that he was able to do other jobs at the sedentary exertional level which exist in significant numbers in the national economy.

In drawing his conclusion, the ALJ pointed to several parts of Plaintiff's medical records. The ALJ stated that a CT scan showed only mild disc slipping at one level and isolated exams showed spinal tenderness, despite complaints of disabling lower back pain. (Tr. 15-16, 352, 419, 500.) The ALJ also stated that Plaintiff's testimony regarding the severity of her leg swelling was contradicted by the fact that it was treated only with medication and her doctor recommended elevating her legs only while at rest during the day and while sleeping. (Tr. 523.)

The ALJ also determined that Plaintiff's mental impairments were non-severe (Tr. 17-18) as supported by multiple normal mental status examinations throughout

the record. (Tr. 16.) The ALJ emphasized that the only evidence of an abnormal mental status was during a consultative examination with psychologist Fred D. Klug, who observed deficits in Plaintiff's abstract thinking, judgment, and insight. (Tr. 16-17, 419-23.)

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court finds that the ALJ's summary of the record in his decision, when compared with the issues raised by Plaintiff, is sufficiently comprehensive. The Court will, however, note some key findings.

### I. Agency Records

Plaintiff was born on December 31, 1981 and received a GED. (Tr. 70, 76.) In her function report, Plaintiff stated that she was unable to sit or stand for periods of time because of her back, suffered from numbness and tingling pain in her feet, and experienced pain in her lower back and legs. (Tr. 226, 236.) She also alleged that her depression affected her memory and concentration. (Tr. 231.) Plaintiff previously worked as a manager, and customer service clerk. (Tr. 269.) Plaintiff acknowledged that she could go out alone, drive, shop, and managing finances, but also claimed that she could no longer stand long enough to cook meals other than frozen foods. (Tr. 228-29.)

### II. Medical Records

In September 2016, Plaintiff's primary care provider diagnosed her with type II diabetes with diabetic polyneuropathy and spondylolisthesis (disc slippage). (Tr.

310.) She was later diagnosed with sensorimotor peripheral neuropathy. (Tr. 594.) She consistently had a body mass index above 45, indicating that she is obese (Tr. 281, 288, 291, 293, 301, 311, 345, 353, 598), and constantly complained of low back pain. (Tr. 282, 302, 307, 348, 366, 373, 427, 455, 467, 522, 525, 556.) While Plaintiff exhibited a decreased range of motion in lumbar spine (Tr. 473), a CT scan showed mild spondylolisthesis at one level (Tr. 500) and an exam showed back tenderness only (Tr. 352.) The physician's assistant prescribed Percocet. (Tr. 306.)

During some primary care provider appointments, Plaintiff reported suffering from numbness, tingling, burning, and pain in her legs and feet from her neuropathy. (Tr. 313, 393, 469.) The physician's assistant prescribed Lyrica. (Tr. 323.) She also complained of swelling in her legs and had examinations showing trace pedal edema (Tr. 460, 521) and edema of her legs. (Tr. 461.) To deal with the swelling, Plaintiff was instructed to elevate her legs above waist while resting during the day and sleeping at night, pump her lower calf muscles intermittently throughout the day to assist with venous return, and wear support hose during the day. (Tr. 461, 523.)

At appointments with her primary care provider from July 2018 to July 2019, Plaintiff generally reported good blood sugar in the morning that increased in the later in the day (Tr. 291, 346, 366, 375, 394, 455, 462.) The physician's assistant noted that Plaintiff was non-compliant with recommended treatment and diet, and her diabetes was uncontrolled (Tr. 290, 295, 303, 305, 313, 339, 348, 353, 373, 382-

83, 397-98, 460, 467, 473.) In February 2020, Plaintiff again reported that she had not been checking her blood sugar. (Tr. 514.)

At these appointments, Plaintiff sometimes reported anxiety, depression, trouble sleeping, and problems getting her mind to stop at night. (Tr. 280, 291, 529). She was diagnosed with anxiety and depression (Tr. 312, 559) and prescribed Klonopin, Prozac, and, later, Trazodone. (Tr. 306, 533.)

### III. Consultative Examinations

In June 2019, Plaintiff saw Dr. Adrian Feinerman for a consultative exam. (Tr. 427-34.) Plaintiff complained of low back pain due to degenerative disc disease and spondylolisthesis. Feinerman noted no limitation of motion of any joint and no anatomic deformity of the cervical, thoracic, or lumbar spine. He further reported no limitation of motion of any spinal segment. Plaintiff had full strength and range of motion throughout the examination, along with the ability to sit, stand, and walk on her own.

Fred Klug, Ph.D., performed a consultative psychological exam in May 2019. (Tr. 419-23.) Dr. Klug observed deficits in Plaintiff's short-term memory, abstract thinking, judgment, and insight. He reported that plaintiff's long-term memory was intact. Attention was adequate. Concentration and reasoning were good. The ability to do simple calculations was fair. He noted that Plaintiff frequently worried and exhibited some compulsive behaviors. Dr. Klug did not recommend any workplace restrictions.

## IV. State Agency RFC Assessments

In June 2019, state agency physician Dr. Vidya Madala assessed plaintiff's physical RFC based on a review of the medical records. (Tr. 78-82.) She opined that Plaintiff could perform work at the light exertional level. She found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours, and sit 6 hours, in an 8-hour workday. Another state agency consultant, Dr. Lionel Hudspeth, completed a Psychiatric Review Technique form stating that plaintiff did not have a severe mental impairment. (Tr. 76-77.) Dr. Hudspeth opined Plaintiff's anxiety and depression caused only mild limits interacting with others and concentrating, persisting, or maintaining pace. He found no limits in understanding, remembering, or applying information and adapting or managing.

In December 2019, state agency physician Dr. Lenore Gonzalez assessed plaintiff's RFC based on a review of the file materials and mostly agreed with Madala's findings, determining that Plaintiff could perform work at the light exertional level. (Tr. 91-95.) Regarding psychiatric review, Dr. Howard Tin agreed with Dr. Hudspeth that Plaintiff's anxiety and depression were non-severe, but found mild limits understanding, remembering, or applying information and interacting with others, and no limits with concentration, persistence, or pace, and adapting or managing. (Tr. 93).

## ANALYSIS

Plaintiff claimed she suffers from a variety of mental and physical ailments that, in conjunction, prevent her from being able to perform even sedentary work.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. However, the scope is limited and review is deferential. The record indicates that the ALJ's findings were supported by substantial evidence, and he did not commit any errors of law.

## I. Residual Functional Capacity

Plaintiff first argues that Defendant's RFC assessment is not supported by substantial evidence since he failed to explain the evidence he relied on and how it led to his findings. The ALJ used Plaintiff's deficits, including non-exertional impairments, which are indeed serious, to come to a determination from his RFC that Plaintiff was limited to sedentary work. Sedentary work is defined by the Guidelines in terms of the strength requirements of the job, described in the regulations as physical exertion or exertional requirements. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

The ALJ determined that plaintiff's residual functional capacity was lower than the state medical examiners', with each state medical consultant finding plaintiff capable of performing light work after reviewing plaintiff's medical records. Dr. Feinerman and Dr. Klug did not arrive at a conclusion as to plaintiff's work-related capacity, but Dr. Feinerman's findings appear to be in line with the state

agency examiners, leading to some criticism from the ALJ. The ALJ embraced Dr. Klug's findings. In making his determination. the ALJ explicitly incorporated the most restrictive non-exertional limitations from the state agency determinations and the record.

Plaintiff never provided an opinion from any doctor on his work-related functioning to counter the ALJ's findings. It was Plaintiff's burden to show that his alleged impairments affected his ability to work. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); 20 C.F.R. § 404.1512(a) & (c). "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (*citing Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

Additionally, Plaintiff's evidentiary deficit argument is misplaced. in the case cited by Plaintiff, *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010), the ALJ discredited the RFC opinions of both the state agency physician and the claimant's treating physician. *Id.* at 688. As a result, the only other relevant medical opinion left to the ALJ in that case was from a third doctor, whom the ALJ did not discuss, and whose opinion did not include a functional assessment of the claimant's abilities. *Id.* at 690. The Seventh Circuit remanded the decision of the ALJ, holding that it was not the ALJ's evaluation of the claimant's treating physician that required remand, but rather "the evidentiary deficit left by the ALJ's rejection of his reports[.]" *Id.* at 689-90. According to the Court, "[t]he rest of the record simply [did] not support the parameters included in the ALJ's residual functional capacity

determination, such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* at 690. Here, there is no evidentiary deficit because the ALJ did not throw any consultant's opinion out completely.

Furthermore, Plaintiff is only partially correct in her analysis of updated opinions. It is true that if a plaintiff submits new and potentially decisive findings to the ALJ after state agency consultant review, the ALJ should seek an updated opinion. But the ALJ's findings did not constitute an uncritical acceptance of a consultants' conclusions necessary for reversible error. Under this context, even if there was an administrative error, it was harmless because the ALJ likely would have reached the same result. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (citing S.S.R. 96-6p and 20 C.F.R. § 404.1527(f)).

## II.   Subjective Symptom Allegations

Plaintiff also argues that the ALJ's analysis of Plaintiff's subjective symptoms was legally insufficient because the ALJ didn't explain why he found Plaintiff's statements about her symptoms and limitations to be inconsistent with the record. (Doc. 20, p. 12.)

The regulations provide factors for an ALJ to consider in determining the extent to which a claimant's statements about the intensity and persistence of his symptoms limit his capacity for work. 20 C.F.R. § 404.1529(c). Those factors include objective medical evidence, information from a claimant's medical sources about her symptoms, a claimant's course of treatment, daily activities, and inconsistencies between a claimant's statements and other evidence. 20 C.F.R. § 404.1529(c)(2)-(4).

The ALJ must carefully consider the entire case record and evaluate the intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p. Though the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski*, 322 F.3d at 917 (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski*, 245 F.3d at 888). That said, the ALJ's analysis of a plaintiff's subjective symptom complaints must be upheld unless it was "patently wrong," a standard which allows reversal of an ALJ's decision only when it was lacking in "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Here, the ALJ summarized medical evidence that contradicted Plaintiff's subjective symptom allegations. Plaintiff claims that the ALJ did not explain why the evidence cited undermined Plaintiff's statements, but providing the contradictory evidence is enough for the reader to understand that there is a conflict. Plaintiff's example about spending most of her time elevating her legs is illustrative. The ALJ stated that Plaintiff's testimony at the hearing regarding the severity of her leg swelling was contradicted by treatment and the doctor's recommendation of elevating her legs only while resting or sleeping. (Tr. 523.)

Plaintiff's subjective statements regarding her mental impairments and activities of daily living were also adequately discussed with contradictory evidence provided. The ALJ recounted Plaintiff's account of her mental impairments and daily activities in manner sufficient to build a logical bridge to his conclusion that

Plaintiff functions to a greater ability than she leads on. The ALJ summarized Plaintiff's medical records and function reports in detail and provided reasonable explanations for his findings.

### III. Separation of Powers

Lastly, Plaintiff argues that the structure of the Social Security Administration was constitutionally invalid at the time of the ALJ's decision, rendering the decision constitutionally defective. Because a constitutional defect in the President's ability to remove an agency director does not undermine the authority of actions taken by a properly appointed director, Plaintiff's argument lacks the firm ground necessary to reverse the ALJ's decision. *See Collins v. Yellen,* 141 S. Ct. 1761, 1787 (2021).

#### CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no reversable errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: August 12, 2022**

> **s/ *Stephen P. McGlynn***
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**